SCHLANGER *v.* SEAMANS, SECRETARY OF THE
AIR FORCE, ET AL.

No. 5481.   Argued February 22, 1971—Decided March 23, 1971

DOUGLAS, J., delivered the opinion of the Court, in which BURGER,
C. J., and BLACK, BRENNAN, WHITE, MARSHALL, and BLACKMUN,
JJ., joined. HARLAN, J., concurred in the result. STEWART, J.,
dissented.

Herbert P. Schlanger, petitioner, argued the cause and
filed a brief *pro se.*

*Solicitor General Griswold* argued the cause for re-
spondents.   With him on the brief were *Assistant Attor-
ney General Gray, Morton Hollander,* and *Robert E.
Kopp.*

*Melvin L. Wulf* filed a brief for the American Civil
Liberties Union as *amicus curiae* urging reversal.

MR. JUSTICE DOUGLAS delivered the opinion of the
Court.

The sole question in this case is whether the District
Court for the District of Arizona had jurisdiction to
entertain on the merits petitioner's application for a writ
of habeas corpus.   He is an enlisted man who was ac-
cepted in the Airman's Education and Commissioning
Program, an officer training project, and was assigned to

Wright-Patterson Air Force Base (AFB), Ohio, "with duty at Arizona State University" for training. While studying in Arizona and before completion of the course, he was removed from the program, allegedly for engaging in civil rights activities on the campus.

While he was seeking administrative relief through command channels, he was reassigned to Moody AFB, Georgia, to complete the remainder of his six-year re-enlistment in a noncommissioned status. After exhausting those remedies he was given permissive temporary duty to attend Arizona State for study, this time by his superiors at Moody AFB under a different program called Operation Bootstrap, and at his own expense.[1]

Thereafter [2] he filed his application for habeas corpus in Arizona alleging that his enlistment contract had been breached and that he was being detained unlawfully. The District Court denied the application. The Court of Appeals affirmed on the basis of *Jarrett* v. *Resor,* 426 F. 2d 213. The case is here on a petition for certiorari which we granted. 400 U. S. 865.

The respondents to this suit are the Secretary of the Air Force, the Commander of Moody AFB, and the Commander of the AF ROTC program on the Arizona State campus. The last respondent was the only one of the

---

[1] Headquarters at Moody AFB assigned petitioner to temporary duty at Arizona State University. By its terms, the order "permitted [petitioner] to proceed from Moody AFB, GA. to Arizona State University, Tempe, AZ, effective on or about 4 June 1969 for approximately 70 days for the purpose of attending the University under Operation Bootstrap and then return to Moody AFB, GA." The travel authorized was to be "at no expense to the Government."

Petitioner attended Arizona State in the summer of 1969 and obtained his degree.

[2] This action was started shortly after petitioner had obtained his degree at Arizona State and while he was still in Arizona.

three present in Arizona and he had no control over petitioner who concededly was not in his chain of command, since petitioner was not in the AF ROTC program, but in Operation Bootstrap. The commanding officer at Moody AFB in Georgia did have custody and control over petitioner; but he was neither a resident of the Arizona judicial district nor amenable to its process.

It is true, of course, that the commanding officer at Moody AFB exerted control over petitioner in the sense that his arm was long and petitioner was effectively subject to his orders and directions. There are cases which suggest that such control to establish custody may be adequate for habeas corpus jurisdiction even though the control is exercised from a point located outside the State, as long as the petitioner is in the district or the State. *Donigian* v. *Laird,* 308 F. Supp. 449. For reasons to be stated, we do not reach that question.

The procedure governing issuance of the writ is provided by statute. The federal courts may grant the writ "within their respective jurisdictions." 28 U. S. C. § 2241 (a). While the Act speaks of "a prisoner" (28 U. S. C. § 2241 (c)), the term has been liberally construed to include members of the armed services who have been unlawfully detained, restrained, or confined. *Eagles* v. *Samuels,* 329 U. S. 304, 312. The Act extends to those "in custody under or by color of the authority of the United States." 28 U. S. C. § 2241 (c)(1). The question in the instant case is whether any custodian, or one in the chain of command, as well as the person detained, must be in the territorial jurisdiction of the District Court.

In *Ahrens* v. *Clark,* 335 U. S. 188, we held that it was not sufficient if the custodian alone be found in the jurisdiction where the persons detained were outside the juris-

diction[3] and that jurisdiction over the respondent was territorial.[4] The dissent in that case thought that the critical element was not where the applicant was confined but where the custodian was located; that if the custodian were in the territorial jurisdiction of the District Court, then appropriate relief could be effected.

Whichever view is taken of the problem in *Ahrens* v. *Clark*, the case is of little help here. For while petitioner is within the territorial jurisdiction of the District Court, the custodian—the Commander of Moody AFB—

---

[3] Shortly thereafter Congress provided that a prisoner, no matter where held, could *by motion* invoke the jurisdiction of the sentencing court and be released on a showing that the sentence was unlawful. 28 U. S. C. § 2255. See *United States* v. *Hayman*, 342 U. S. 205, 220; *Kaufman* v. *United States*, 394 U. S. 217.

Later Congress made an exception to the jurisdictional requirement noted in *Ahrens* by allowing a state prisoner to seek habeas corpus in the district where he was sentenced, as well as in the district where he is confined, provided both are within the same State. 28 U. S. C. § 2241 (d) (1964 ed., Supp. V). As respects that amendment the Court said in *Nelson* v. *George*, 399 U. S. 224, 228 n. 5:

"The legislative history of the 1966 amendments to 28 U. S. C. § 2241 (d) (1964 ed., Supp. V) suggests that Congress may have intended to endorse and preserve the territorial rule of *Ahrens* to the extent that it was not altered by those amendments. See H. R. Rep. No. 1894, 89th Cong., 2d Sess., 1–2 (1966). See also S. Rep. No. 1502, 89th Cong., 2d Sess. (1966)."

[4] Although by 28 U. S. C. § 1391 (e) (1964 ed., Supp. V), Congress has provided for nationwide service of process in a "civil action in which each defendant is an officer or employee of the United States," the legislative history of that section is barren of any indication that Congress extended habeas corpus jurisdiction. That section was enacted to broaden the venue of civil actions which could previously have been brought only in the District of Columbia. See H. R. Rep. No. 536, 87th Cong., 1st Sess., 1; S. Rep. No. 1992, 87th Cong., 2d Sess., 2. Though habeas corpus is technically "civil," it is not automatically subject to all the rules governing ordinary civil actions. See *Harris* v. *Nelson*, 394 U. S. 286.

is not. In other words, even under the minority view in *Ahrens* v. *Clark,* the District Court in Arizona has no custodian within its reach against whom its writ can run. Hence, even if we assume that petitioner is "in custody" [5] in Arizona in the sense that he is subject to military orders and control which act as a restraint on his freedom of movement (*Jones* v. *Cunningham,* 371 U. S. 236, 240), the absence of his custodian is fatal to the jurisdiction of the Arizona District Court. Cf. *Rudick* v. *Laird,* 412 F. 2d 16, 21.

Had petitioner, at the time of the filing of the petition, been under the command of the Air Force officer assigned

---

[5] The concept of "custody" has been an evolving one as Judge Northrop shows in *Donigian* v. *Laird,* 308 F. Supp. 449, 451. And see *Peyton* v. *Rowe,* 391 U. S. 54, 64–66. In *Jones* v. *Cunningham,* 371 U. S. 236, 238, 240, 243, we said:

"While limiting its availability to those 'in custody,' the statute does not attempt to mark the boundaries of 'custody' nor in any way other than by use of that word attempt to limit the situations in which the writ can be used. . . .

. . . . .

"History, usage, and precedent can leave no doubt that, besides physical imprisonment, there are other restraints on a man's liberty, restraints not shared by the public generally, which have been thought sufficient in the English-speaking world to support the issuance of habeas corpus. . . .

. . . . .

"It [the Great Writ] is not now and never has been a static, narrow, formalistic remedy; its scope has grown to achieve its grand purpose—the protection of individuals against erosion of their right to be free from wrongful restraints upon their liberty. While petitioner's parole releases him from immediate physical imprisonment, it imposes conditions which significantly confine and restrain his freedom; this is enough to keep him in the 'custody' of the members of the Virginia Parole Board within the meaning of the habeas corpus statute; if he can prove his allegations this custody is in violation of the Constitution, and it was therefore error for the Court of Appeals to dismiss his case as moot instead of permitting him to add the Parole Board members as respondents."

as liaison officer at Arizona State to supervise the Education and Commissioning Program, we would have a different question. We do not reach it nor do we reach any aspects of the merits, *viz.*, whether, if petitioner be right in contending that his contract of enlistment was breached, habeas corpus is the appropriate remedy.

*Affirmed.*

MR. JUSTICE HARLAN concurs in the result.

MR. JUSTICE STEWART dissents.