Alexis George **MORALES**, Petitioner,

v.

**Col. Stanley J. OBARSKI, Base Commander, Ramsey Air Force Base, Aguadilla, Puerto Rico,**

**Paul Seamans, Secretary of the Air Force, Respondents.**

Civ. No. 431–71.

United States District Court, D. Puerto Rico.

Sept. 22, 1971.

Roberto José Maldonado, Rio Piedras, P. R., for petitioner.

Julio Morales Sánchez, U. S. Atty., San Juan, P. R., for respondents.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

TOLEDO, District Judge.

Petitioner filed on June 18, 1971, a Petition for Writ of Habeas Corpus seeking his release or discharge from the custody of the respondents. In the alternative, the petitioner sought that he be not removed from the jurisdiction of this Court, pending the final determination of his petition and that upon a final determination, this Court issue an order directing the respondents to discharge him from their custody and from the custody of the Armed Forces.

On July 13, 1971, this Court issued an Order to Show Cause why the Writ of Habeas Corpus should not be issued as prayed.

The respondents filed on July 20, 1971, a motion to dismiss the petition on the grounds that neither the petitioner nor his custodian, are in the jurisdiction of this Court, as required by Schlanger v. Seamans, 401 U.S. 487, 91 S.Ct. 995, 28 L.Ed.2d 251 (1971); Ahrens v. Clark,

335 U.S. 188, 68 S.Ct. 1443, 92 L.Ed. 1898 (1948); Wurster v. Perrin, 303 F.Supp. 480 (D.P.R.1969); Morales Crespo v. Perrin, 309 F.Supp. 203 (D.P.R.1970); United States ex rel. Rudick v. Laird, 412 F.2d 16 (2nd Cir. 1969), cert. den. 396 U.S. 918, 90 S.Ct. 244, 24 L.Ed.2d 197; Jarret v. Resor, 426 F.2d 213 (9th Cir. 1970); and Pérez Jiménez v. Laird, 325 F.Supp. 457 (D.P.R.), decided on April 30, 1971 by Judge Fernández Badillo.

A hearing on the Order to Show Cause was held on July 22, 1971 at which time this Court instructed the parties to file, not later than August 20, 1971, simultaneous memoranda, to be accompanied with affidavits and all pertinent documents covering the question of the jurisdiction of this Court. On motion of petitioner, the date of the filing of said memoranda was extended to September 3, 1971.

On August 23, 1971, the petitioner, who on said date was present in Puerto Rico because of a leave granted to him, filed a motion requesting this Court to issue a Temporary Restraining Order. Appearing that there was no opposition on the part of the respondents and that irreparable harm would have been caused to the petitioner if he were removed from the jurisdiction, making it impossible for him to confer with his attorney, this Court granted the motion on the same day.

This Court heard, on August 30, 1971, more argument for the petitioner and the respondent on the order to show cause.

Again, on September 3, 1971, the case was called for hearing on a motion of petitioner for an extension of the temporary restraining order granted on August 23, 1971. The Court granted the motion. On this same date, the petitioner and the respondents filed the memorandum of law this Court requested from them on July 22, 1971. The petitioner was given until September 8, 1971 to file any opposition to the respondents' memorandum of law. It was further stated by the Court that any failure on the part of the petitioner to file any memorandum in opposition to respondents' memorandum of

law, would not keep the Court from entering a decision on this case.

On September 8, 1971, the petitioner requested an extension for filing a memorandum of law in opposition to respondents' memorandum of law and the Court granted an extension until September 9, 1971 at 5:00 P.M. The petitioner failed to file any memorandum in opposition to respondents' memorandum of law on said date.

The Temporary Restraining Order granted on August 23, 1971 and extended on September 3, 1971, was extended by this Court on September 13, 1971 and on September 17, 1971 in order to file formal Findings of Fact, Conclusions of Law and Judgment.

The jurisdiction of this Court was invoked pursuant to Title 28, United States Code, Sections 2241(a), 2241(c) (1) and 2241(c) (3).

On the basis of the foregoing, the exhibits admitted in evidence, the memoranda of law submitted by the parties and the affidavits and Air Force Regulations attached to the respondents' memorandum of law, this Court hereby enters the following

## FINDINGS OF FACT

Petitioner was a reservist under the control of the Air Force Personnel Center in Denver, Colorado, as a "non-unit participant". He was serving his term in the Reserve in Puerto Rico under the administrative supervision of said Air Force Personnel Center and had no obligation to attend drills in any unit in Puerto Rico or elsewhere.

On March 29, 1971, the petitioner was notified in writing by the Air Reserve Personnel Center, Denver, Colorado, that under the provisions of the Executive Order 11366 of August 4, 1967 and the Department of Defense Directive 1215.13 of February 23, 1967, he had been ordered to extended active duty for failure to comply with his incurred military obligation by reason of his failure to obtain a Ready Reserve Assignment.[1] Through the same letter, he was also notified that the Special Order AB-1371 of March 23, 1971 placed him on extended active duty effective May 3, 1971.

Special Order AB-1371 of March 23, 1971, for extended involuntary active duty tour[2] expressed on its Item 11, that the petitioner in this cause was assigned to Detachment 446, 2200 Support Squadron, AFRES, Ellington Air Force Base, Houston, Texas, with approximately ten (10) days enroute at Ramey Air Force Base, Aguadilla, Puerto Rico, for active duty processing and transportation to ZI. Item 12 of said special order expressed that the effective date of duty was May 3, 1971, and that the petitioner should proceed and report not later than May 3, 1971 to Consolidated Base Personnel Office, Ramey Air Force Base, Aguadilla, Puerto Rico. Said Item of the special order further stated that he was to report to the Commander of Detachment 446, 2200 Support Squadron, Ellington Air Force Base, Houston, Texas, not later than four days after arrival in ZI.

On April 17, 1971, the petitioner sent to the Air Reserve Personnel Center an "Appeal" requesting those authorities to rescind their order calling him for active duty and also requesting a hearing on the matter.

The extended active duty orders, AB-1371, was amended by Special Order AB-3670[3] in May 20, 1971.

1. Said notification was attached to the Petition for Writ of Habeas Corpus filed on June 18, 1971.

2. The extended involuntary active duty tour is for a period of 18 months and 14 days, unless sooner relieved. A copy of AB-1371 was also attached to the Petition for Writ of Habeas Corpus filed by the petitioner.

3. Government Exhibit A(3). The amendment expressed that he was assigned to 2578 Air Base Group, AFRES, Ellington Air Force Base, Houston, Texas and not to Detachment 446, 2200 Support Squadron of said Air Force Base.

Petitioner failed to comply with the Special Order AB–1371, as amended by Special Order AB–1370.

On June 4, 1971, DD Form 553, called "Absentee Wanted by the Armed Forces," was issued.[4] Said form expressed that the petitioner, had been absent without leave from 2578 Air Base Group, Ellington Air Force Base, Houston, Texas, since May 4, 1971 and had been dropped from the rolls as a deserter since June 2, 1971. A copy of this form was sent to the Rio Piedras Police Department, Rio Piedras, Puerto Rico, to the Security and Law Enforcement Officer at Ramey Air Force Base, Aguadilla, Puerto Rico and to other pertinent authorities.

On June 15, 1971, the Rio Piedras Police Station, Rio Piedras, Puerto Rico, received DD Form 553 from the United States Air Force. Pursuant to said form, the Police of Puerto Rico delivered summons to the petitioner's father at his place of residence. On June 16, 1971, the petitioner in this cause appeared at the Rio Piedras Police Station. Said police station notified the petitioner's presence to Fort Buchanan, Third Army Group. Two members of the Military Police Unit of the Third Army Group, who handle the return of military absentees to military control appeared at the Police Station and proceeded to take the petitioner away.

The petitioner remained at Fort Buchanan until June 17, 1971 when he was released to the Air Force Police, who took him back to Ramey Air Force Base, Aguadilla, Puerto Rico, arriving there at approximately 2:00 P.M. of that day. At said air base, the petitioner was confined until approximately 11:30 A.M. of June 18, 1971, when he was to be taken to the terminal to board an aircraft to take him to Memphis, Tennessee, from where he was to proceed by aircraft to New Orleans, Louisiana and from said last city to Houston, Texas and then by car to Ellington Air Force Base, Texas. After some delay caused by the petitioner's refusal[5] to board the aircraft, it took off at approximately 1:00 P.M.[6] of said June 18, 1971.

A petition for a writ of habeas corpus was filed by the attorney for the petitioner at approximately 3:45 P.M. on June 18, 1971; that is, after the petitioner had departed by aircraft bound to Memphis, Tennessee.

The respondents, on a Motion to Dismiss the petition for the Writ of Habeas Corpus filed on July 20, 1971, assert that this Court lacks jurisdiction because neither the petitioner nor his custodian are under the jurisdiction of this Court.

In the memorandum of law filed by the respondents on September 3, 1971, in support of their motion to dismiss, the respondents reaffirm their assertion that this Court lacks jurisdiction and state as a further ground for dismissal that the petitioner has not exhausted the administrative remedies available.[7]

4. Government Exhibit A(2). Section (f) of Paragraph 8, Chapter 14 of the Air Force Manual 35–3 reads:
(f). Failure to Report. A member who fails to report for active duty as ordered will be processed according to AFR 35–73.
AF Regulation 35–73 of December 21, 1970, regulates desertion and unauthorized absenteeism and establishes that a DD Form 553, will be prepared in those cases. Said regulation also establishes that the civil authorities have authority to apprehend for the United States Air Force any member absent without leave.

5. The supporting affidavits to the respondent's memorandum of law reflects that the petitioner refused to voluntarily board the aircraft bound to take him to his assigned unit in Ellington Air Force Base, Houston, Texas. Said affidavits also reflect that some force had to be applied to get him on board the aircraft, that is, that he was lifted from a couch in the terminal where he had talked to a Judge Advocate General Counsel, pushed to the location of the aircraft and physically lifted to the inside of said aircraft.

6. The various affidavits supporting government memorandum of law reflect the aircraft left Ramey Air Force Base not later than said hour.

7. The Court gave the petitioner until September 8, 1971, later extended to Sep-

In view of the foregoing Findings of Fact, the Court makes the following

## CONCLUSIONS OF LAW

The power to hear habeas corpus petitions is granted to federal district courts by Title 28, United States Code, Section 2241, which in its pertinent part, provides:

"(a) writs of habeas corpus may be granted by * * * the district courts * * * within their respective jurisdictions."

In the recent case of Schlanger v. Seamans, 401 U.S. 487, 91 S.Ct. 995, 28 L.Ed. 2d 251 (1971), the Supreme Court of the United States decided that to satisfy Title 28, U.S.C., Section 2241(a), it is not only required for a petitioner to be in custody within the territorial jurisdiction of a district court, but that it is also a necessary requirement that his custodian be within the reach of the same court. In said decision, the Supreme Court reaffirmed its previous decision of Ahrens v. Clark, 335 U.S. 188, 68 S.Ct. 1443, 92 L.Ed. 1898 (1948), where it was held not sufficient basis for personal jurisdiction that the custodian alone be found in the jurisdiction when the person detained is outside the jurisdiction and the jurisdiction over the respondent is territorial. The Supreme Court also reaffirmed the holding of United States ex rel. Rudick v. Laird, 412 F.2d 16 (2d Cir. 1969), cert. den. 396 U.S. 918, 90 S.Ct. 244, 24 L.Ed.2d 197, that the absence of a petitioner's custodian is fatal to the jurisdiction of a district court.

The petitioner on his memorandum of law on the question of jurisdiction emphasizes to this Court that the expanding concept of jurisdiction of the federal courts is best explained in the decision of United States ex rel. Lohmeyer v. Laird, 318 F.Supp. 94 (D.Md.1970), where the Government sought a dismissal on the basis of Ahrens v. Clark, supra, and of United States ex rel. Rudick v. Laird, supra.

The cited case deals with an area of law where the district courts had not found themselves in agreement,[8] that is, whether a military man under orders from his former duty station to report to a new duty station, but lawfully on leave and physically within the territorial jurisdiction of the forum, is "in custody" within the jurisdiction of that court.

Said case seems to hold, following the decision of Word v. State of North Carolina, 406 F.2d 352 (4th Cir. 1969), that a district court can issue a writ of habeas corpus under Title 28, United States Code, Section 2241, if it has personal jurisdiction of a proper custodian and the capacity, within its geographic boundaries, to enforce its orders; physical presence of the petitioner within the district being not an invariable jurisdictional prerequisite.

This Court has on several occasions, encountered the above mentioned factual situation and has consistently decided that on said situation, a petitioner is not "in custody" within the jurisdiction of this Court as required by Title 28, United States Code, Section 2241. See Wurster v. Perrin, 303 F.Supp. 480 (1969); Morales Crespo v. Perrin, 309 F.Supp. 203, 1970; Pérez Jiménez v. Laird, 325 F.Supp. 457 decided on April 30, 1971, by Judge Fernández Badillo. Our position has been affirmed by Schlanger v. Seamans, supra, a case posterior to the opinion of United States ex rel. Lohmeyer v. Laird, supra.

The case cited by the petitioner can also be distinguished factually for, as

---

tember 9, 1971 on motion by the petitioner, to file any opposition to respondents' memorandum of law of September 3, 1971, as to respondents' further ground for dismissal of petitioner's failure to exhaust the available administrative remedies. Although no memorandum in opposition was filed, this Court will cover the aspect of petitioner's failure to exhaust the administrative remedies as alleged by respondents.

8. This court is of the opinion that such an issue has been solved by the Supreme Court's decision of Schlanger v. Seamans, supra.

we said before, said decision is applicable to a situation where a person in the military, under orders from a former duty station to report to a new duty station, *lawfully on leave* and physically within the territorial jurisdiction of a third forum, requests a habeas corpus in that last forum.

This Court has entered as a finding of fact, that petitioner's effective date of active duty, according to Special Order AB–1371, was May 3, 1971; date at which he was to report to Consolidated Base Personnel Office at Ramey Air Force Base, Aguadilla, Puerto Rico, for E.A.D. processing in route to Ellington Air Force Base, Texas.

Since petitioner failed to comply with the Special Order, DD Form 553, was prepared. Said form reflects that the petitioner had been *absent without leave* from 2578 Air Base Group, Ellington Air Force Base, Houston, Texas, since May 4, 1971, and had been dropped from the rolls as a deserter since June 2, 1971. DD Form 553 requested that individual absent without leave, be returned to custody of the military authorities of the United States.

■ The petitioner, by not filing his petition until he was absent without leave, faced a further strain upon any concept of custody by a command from which he could have been officially detached. Benitez-Manrique v. Micheli, 439 F.2d 1173 (1st Cir. 1971). A member of the armed forces who is voluntarily in a place other than an assigned post, is not in custody in that place. United States ex rel. Rudick v. Laird, 412 F.2d 16, 20–21 (2d Cir. 1969).

■ From the aforementioned, this Court finds that petitioner's assertion that he was under the custody of respondent, Colonel Stanley Obarski, Ramey Air Force Base Commander, during the time he was on board an aircraft and until he reached his destination, is not correct in law.

At the time the petition was filed, no respondent within the jurisdiction of this Court, can be considered petitioner's immediate commanding officer for at said time, the petitioner was absent without leave from Ellington Air Force Base, Texas. The commanding officer of said last air base, is his custodian, upon whom this Court lacks jurisdiction.

Although at the time of this opinion, the petitioner is physically present, within the limits of the territorial jurisdiction of this Court, by virtue of a temporary restraining order granted to him while he was on official leave to visit his wife in Puerto Rico, this Court still lacks jurisdiction.

The facts of this particular case dictates that the petitioner must file his application in the district court in the jurisdiction of his custodian in Texas. This Court is one of limited jurisdiction and an affirmative showing must be made of its jurisdiction by one who invokes it.

■ The respondents also allege, as a further ground, for dismissal, that the petitioner has not exhausted the administrative remedies available. This assertion is predicated on the fact that petitioner on his complaint stated that he appealed [9] on April 7, 1971, the extended involuntary active duty order of March 29, 1971. It is the respondents' contention that the petitioner did not take the appeal in the manner required by the Air Force Regulations.

The applicable regulation of the Air Force in relation to petitioner's call for

---

9. Attached to the complaint the petitioner included photocopy of a document dated April 17, 1971, named "Appeal" which was signed by the attorney for the petitioner in this cause. The document requested the Air Reserve Personnel Center to rescind their order calling him to active duty for failure to participate satisfactorily in his Reserve duties. Petitioner also requested a hearing to submit evidence, demonstrative that he had complied satisfactorily with his reserve duties that he was not granted appropriate due process to explain irregularities existent in the reasons for his call to active duty; and that there has been prejudice against him leading to his call to active duty and that he is being punished by said call because of his activities in support of the independence of Puerto Rico.

extended active duty, is Air Force Manual 35–3.

Paragraph 3 of Chapter 14 [10] of said Manual is applicable to members of the Air Reserve Forces who have a military service obligation.

Paragraph 14–5 governs the failure to satisfactorily participate in reserve training.[11]

The involuntary tour of active duty is governed by Paragraph 14–0 of Air Force Manual 35–3, which in Section c, reads:

c. Active Duty Orders:

"(1) Authority to publish active duty orders is delegated to ARPC. Publish orders according to AFM 10–3, chapter 2, and cite 10 U.S.C. 673a, Executive Order No. 11366, 4 August 1967, and this chapter, as authority. Send the orders to the individual with a letter of transmittal fully explaining the purpose of the orders and stating that failure to comply with the orders will make the member subject to disciplinary action under the Uniform Code of Military Justice." [12]

The petitioner did not request a delay in reporting for active duty [13] as he should have done and if said request for delay were not granted, he could have filed an appeal under the regulations,[14] within 15 days after he receives a decision on his request for delay and the petition of appeal must contain documents showing evidence. This has not been complied with by the petitioner for he failed to submit a request for delay and only limited himself to filing an appeal thirty days after being notified of the extended active duty orders. Wherefore, this Court finds that the petitioner failed to follow the procedure plainly described in the Air Force Manual 35–3. It is clear to this Court that at the time

10. Chapter 14, Paragraph 3 of the Air Force Manual 35–3, expresses in the pertinent part:
"14–3. Who Must Participate in Reserve Training:
a. The following members must participate for the periods shown:
(1) Members who were initially enlisted in an organized unit of a reserve component are required to satisfactorily participate in reserve training for 6 years."

11. Paragraph 14–5 of Air Force Manual 35–3 in the pertinent part states:
"14.5. Failure to Satisfactorily Participate in Reserve Training. A member listed in paragraph 14–3a(1) or (2) who fails to satisfactorily participate will be ordered to active duty if he has not served on AD and/or ACDUTRA for 24 months. Length of active duty will be until the total service on AD and/or ACDUTRA equals 24 months."

12. The letter of March 29, 1971 from the Directorate of Personnel Resources, Air Reserve Personnel Center, attached to the petition for writ of habeas corpus filed by the petitioner complied with this section.

13. Section d. of Chapter 14, paragraph 8 of Air Force Manual 35–3, states:

"d. Delay in Reporting for Active Duty. ARPC is authorized to take final action on requests for delay in reporting for active duty. Delays will be approved only for the minimum period required. Within five days after receipt of letter of notification of intent to order to active duty, the member must notify ARPC of his intent to submit a documented delay case. Substantiating documents are required within 15 days. Thereafter, the case will be promptly evaluated and the member advised accordingly. Reasons for delay and how to process them are shown in table 14.1."

14. The appeals to a request for delay is governed by section e of chapter 14, paragraph 8 of Air Force Manual 35–3, which reads:
"e. Appeals. A member who feels that he has not been given full consideration on a request for delay to report for active duty, transfer to Standby status, or discharge, may submit an appeal within 15 days of receipt of the decision on his request. The appeal must contain documents showing evidence or change in circumstances not previously considered. Cases will be decided by the informal board of officers at ARPC. The individual will be advised of the decision within seven days after receipt of the approving authority."

of filing this petition, the petitioner failed to properly initiate this administrative remedies as required by the above mentioned manual.

Further, if the petitioner believes that he is a conscientious objector to service in the armed forces, and that he complies with the necessary requirements he has available to him, the administrative remedy of requesting a discharge based on conscientious objection under AF Regulation 35–24, is open to him. If the U. S. Air Force should render a decision not favorable to the petitioner as a conscientious objector, he can then seek judicial relief.

This Court has constantly ruled that it lacks jurisdiction to entertain writs of habeas corpus when the petitioner has failed to exhaust the administrative remedies available to him within the military service. See Lt. Harry A. Anduze v. Secretary of Defense of the United States, et al, Civil No. 100–70; León Vázquez v. Commanding Officer of Fort Buchanan, Puerto Rico et al; Civil No. 222–69, Castro López v. U. S. Army et al; Civil No. 221–69; In the matter of the application of Colón Rios v. Bert Perrin, et al; Civil No. 705–69; Martinez Vega v. Secretary of Defense, Civil No. 21–70.

In view of the absence of personal jurisdiction over the custodian of the petitioner, this Court lacks jurisdiction to grant the Petition for Writ of Habeas Corpus. Furthermore, petitioner has not exhausted his administrative remedies before filing his petition.

Wherefore, it is ordered, adjudged and decreed, that the temporary restraining order entered on August 23, 1971 and extended on September 3, 1971, September 13, 1971 and September 17, 1971, be vacated and the Petition for Writ of Habeas Corpus be denied; and

It is further ordered, adjudged and decreed, that the petition be dismissed on the aforementioned grounds.

It is so ordered.