**UNITED STATES of America ex rel. Jayvis Wayne ROWLAND, Petitioner,**

**v.**

**Chief Petty Officer Wesley CLEARY, party in charge, United States Navy Shore Patrol Headquarters, Milwaukee, Wisconsin, et al., Respondents.**

Civ. A. No. 73–C–363.

United States District Court, E. D. Wisconsin.

Aug. 13, 1975.

Phillip L. Padden, Milwaukee, Wis., for petitioner.

Terry E. Mitchell, Asst. U. S. Atty., Milwaukee, Wis., for respondents.

## DECISION AND ORDER

REYNOLDS, Chief Judge.

This is a military habeas corpus action in which relator-petitioner Jayvis Wayne Rowland ("petitioner") seeks a discharge from the Navy because of a breach of his enlistment contract. Respondents are: Chief Petty Officer Wesley Cleary, the party in charge of the Shore Patrol Headquarters in Milwaukee, Wisconsin; Lieutenant Commander Gordon Lindstrom, the Chief Security Officer for the 9th Naval District; James S. Schlesinger, the Secretary of Defense; and John W. Warner, the Secretary of the Navy.* Respondents have filed a motion to dismiss pursuant to Rule 12(b)(2), (3), and (6), or for summary judgment under Rule 56, Federal Rules of Civil Procedure. Petitioner has also filed a motion for sum-

---

* Under Rule 25(d)(1), Federal Rules of Civil Procedure, Secretary Warner's successor, J. William Middendorf II, is automatically substituted as a party.

mary judgment. For the reasons here-inafter indicated, respondents' motion to dismiss the action is granted.

## I.

On September 1, 1972, petitioner enlisted in the United States Navy for a period of three years and executed an enlistment contract.

On March 13, 1973, petitioner went on an unauthorized absence from naval control, at least in part because of what he believed to be the false inducements which had caused him to enlist and the material breach of his enlistment contract by the Navy in failing to assign him to the Pacific coast. This court does not pass on the merits of the petitioner's claim. On April 13, 1973, petitioner was declared a deserter.

On July 10, 1973, petitioner surrendered himself at the office of the United States Attorney for the Eastern District of Wisconsin, located in the Federal Building in Milwaukee, Wisconsin. On the same date the instant habeas corpus petition was filed. Assistant United States Attorney Hirschberg called the United States Navy Shore Patrol headquarters in Milwaukee, which is under the supervision of respondent Chief Petty Officer Wesley Cleary. Hirschberg talked to Frederick Ronal Ward, BT2, at Shore Patrol headquarters, and said that petitioner was on unauthorized absence from the Navy and had turned himself in to the United States Attorney and requested that the Shore Patrol come to the United States Attorney's office.

Ward and another Shore Patrolman thereupon went to the Federal Building and were asked to wait until Hirschberg came into the office. While waiting, they talked briefly to petitioner, who was also seated in the office. Hirschberg arrived and called the two Shore Patrolmen into his office. There Hirschberg said,

"* * * This man is filing a writ of habeas corpus and he's putting up bond. The bond is $5,000, he must put up $500. The man must have the bond here to this office by noon, then he stands a good chance to be released from the Navy temporarily by going before a judge this afternoon

"So now you can call off the posse, the dogs. Call whoever you want to and let them know to call off your dogs, you can't have him now."

Hirschberg further advised them that they could not "pick up" petitioner, but that they could take his identification card.

Ward then left Hirschberg's office and spoke to petitioner. Petitioner explained that he was filing for habeas corpus because he did not get the coast he had been promised when he entered. Petitioner gave Ward his identification card.

Later that day an order was entered releasing petitioner from the custody of respondents and setting an appearance bond of $5,000. This order was consented to by Assistant United States Attorney Hirschberg.

## II.

■ Section 2241(c)(1), 28 U.S.C. provides that the writ of habeas corpus may extend to a "prisoner" who is "in custody under or by color of the authority of the United States." The term "prisoner" has been "liberally construed to include members of the armed services who have been unlawfully detained, restrained, or confined." *Schlanger v. Seamans*, 401 U.S. 487, 489, 91 S.Ct. 995, 997, 28 L.Ed.2d 51 (1971). Further, the concept of "custody" for purposes of federal habeas corpus has been greatly expanded in recent years. See *Hensley v. Municipal Court*, 411 U.S. 345, 93 S.Ct. 1571, 36 L.Ed.2d 294 (1973); *Jones v. Cunningham*, 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963); Note, Developments in the Law—Federal Habeas Corpus, 83 Harv.L.Rev. 1038, 1073–1079 (1970). This expansion in the meaning of "custody" has resulted in a rule that persons who are unlawfully detained, restrained, or confined in the armed services are in sufficient custody

for a district court to have subject matter jurisdiction under 28 U.S.C. § 2241 (c)(1).

■ A provision of 28 U.S.C. § 2241(a) allows federal district courts to grant writs of habeas corpus only "within their respective jurisdictions." This phrase has been held to embody a two-pronged limitation on the power of a district court to grant habeas writs; first, the petitioner must be located within the territorial jurisdiction of the issuing court, and, secondly, the custodian must also be within the territorial jurisdiction.

The rule that a habeas corpus petitioner must be within the territorial jurisdiction of the court does not bar this action, since the petitioner was present in this district at the time the habeas application was filed.

The rule that the petitioner's custodian be within the court's jurisdiction is, however, fatal to this action because under the facts of this case, he was not in the custody of the defendants. At the time this action was filed petitioner was A.W.O.L. for some time. While his commanding officer may no longer have been the captain of the USS Adams (DDG–2) there is nothing in the file which demonstrates that his commander was anyone within this court's territorial jurisdiction. Even if it could be argued that the respondent Secretaries are petitioner's custodians—in itself a doubtful proposition, *United States ex rel. Rudick v. Laird*, 412 F.2d 16, 21 (2d Cir.), cert. denied, 396 U.S. 918, 90 S.Ct. 244, 24 L.Ed.2d 197 (1969)—they are neither within this judicial district nor amenable to this court's process. The total absence of formal contacts between petitioner and the military in this district—other than those occurring in the United States Attorney's office when the habeas application was filed—makes the rationale of *Strait v. Laird*, 406 U.S. 341, 92 S.Ct. 1693, 32 L.Ed.2d 141 (1972) inapplicable here.

Moreover, the events of July 10, 1973, in the United States Attorney's office do not allow the conclusion that either respondent Cleary or respondent Lindstrom had custody of the petitioners. The petitioner was not placed in actual physical custody by Ward and the other Shore Patrolman, and there is nothing which indicates that Assistant United States Attorney Hirschberg took petitioner into custody or even told him not to leave the office. Petitioner's reliance on *Meck v. Commanding Officer, Valley Forge General Hospital*, 452 F.2d 758, 761 n.6 (3d Cir. 1971), is misplaced since in *Meck* the habeas petitioner had been placed in physical custody by Army authorities after he turned himself in.

Since there is no custodian within this court's territorial jurisdiction or subject to process, this action must be dismissed without reaching the merits of petitioner's claim. *Schlanger v. Seamans*, 401 U.S. 487, 91 S.Ct. 995, 28 L. Ed.2d 251 (1971).

It is therefore ordered that the order entered on July 10, 1973, releasing petitioner is vacated.

It is further ordered that this action is dismissed.