546 F.Supp. 455 (1982)
Harold Hayes ALLEN, Jr., Petitioner,
v.
Casper WEINBERGER, et al., Respondents.
No. 82-1034C(3).
United States District Court, E. D. Missouri, E. D.
September 1, 1982.
*456 Peter L. Sissman, Arlington, Va., Leonard J. Frankel, Clayton, Mo., for petitioner.
Joseph B. Moore, Asst. U.S. Atty., St. Louis, Mo., for respondents.

MEMORANDUM
FILIPPINE, District Judge.
This matter is before the Court for decision on the merits after a hearing before the Court. Petitioner brings this action seeking rescission of his agreement with the United States Army, entered into pursuant to the Armed Forces Health Professions Scholarship Act, 10 U.S.C. § 2120. Petitioner seeks a writ of habeas corpus, a preliminary and permanent injunction, and declaratory relief. Essentially, petitioner contends that the Army made misrepresentations to petitioner regarding the benefits he would receive under the scholarship program and thereafter breached its agreement with petitioner. After consideration of the pleadings, the testimony and exhibits introduced at the hearing, the parties' briefs, and the applicable law, the Court makes the following findings of fact and conclusions of law in accordance with Fed. R.Civ.P. 52.

FINDINGS OF FACT
1. Petitioner Harold Hayes Allen, Jr. is a 32-year old physician and orthopedic surgeon. He attended undergraduate school at the University of Virginia which he completed in 1972. Thereafter he enrolled in the University of Virginia Medical School and received his M.D. degree in 1976.
2. Sometime in 1973, the petitioner became aware that the Army was recruiting students for one of its programs.
3. The Army recruited at the University of Virginia Medical School by sending a recruiter, an Army officer, who would set up a table with literature about the Army, would talk to students about programs available to medical students, would answer questions about the Army and its programs and would attempt to recruit medical students into the Army.
4. At some point in 1973 petitioner attended a presentation given at the University of Virginia Medical School by Lt. Colonel Paul Brooke, Jr.
5. The recruiter to whom petitioner spoke outlined the benefits of the Army Health Professions Scholarship Program as follows:
a) Recipients would receive a $400.00 monthly stipend. The recruiters were not certain as to whether the stipend was tax free or not because this was dictated by the Internal Revenue Service. At no time did a recruiter represent to petitioner that the stipend was guaranteed tax-free.
b) Recipients could apply for an Army post-graduate training program or a civilian post-graduate program. At no time did a recruiter represent to petitioner that admission to the better-paying Army program was guaranteed.
*457 c) Upon completion of a military or civilian post-graduate program, recipients would enter a term of active duty at a rank dictated by their constructive service time. According to Army regulations in force at the time, petitioner would have entered active duty as a Major, as he would have had the required eight years constructive service time. The constructive service time requirement has since been changed to ten years.
d) Recipients would have their remaining under-graduate medical school expenses paid by the Army. This included tuition, fees, and book expenses.
6. Petitioner entered into a contract with the Army in October, 1973. The contract recited, inter alia, that petitioner could participate, "if selected," for Army post-graduate training. The agreement is silent as to petitioner's rank upon his entry to active service and the tax status of his $400.00 monthly stipend.
7. The Army commissioned petitioner as a First Lieutenant and later as a Captain in the Army Reserve and paid petitioner's medical school expenses from December 19, 1973 through May 16, 1976. The Army also paid petitioner a $400.00 monthly stipend in this period. In 1975 and 1976 the Army erroneously withheld from petitioner's stipend $97.86 for federal income tax and $268.31 for FICA. These amounts were fully refunded to petitioner.
8. Upon completion of medical school, on May 16, 1976, petitioner applied for a military residency in General Surgery. Petitioner was notified by the Department of the Army on November 21, 1975, that he was not selected for a military residency but could apply for a civilian residency. Petitioner applied and was selected for a civilian residency in General Surgery, which he accepted and began, but did not complete. Pursuant to petitioner's request, he was permitted to transfer to a civilian residency in Orthopedic Surgery, which he completed in June, 1982.
9. Pursuant to 10 U.S.C. § 2123 and the Department of the Army Armed Forces Health Professions Scholarship Program agreement signed by petitioner, petitioner incurred a three-year active duty service obligation upon his completion of medical school on May 16, 1976. From May 16, 1976, to July 14, 1982, petitioner's active duty service obligation was delayed on a yearly basis by the Department of the Army in order to permit him to complete his civilian post-graduate training.
10. On April 1, 1982, petitioner was erroneously ordered to report to active duty at the rank of Captain. The Army had miscalculated petitioner's constructive service time in computing his rank. Accordingly, on August 2, 1982, petitioner's orders were amended, and petitioner was given the rank of Major, retroactive to July 14, 1982. To allow resolution of this action, the date for petitioner's entry into active service has been rescheduled for September 8, 1982.
11. In May and June, 1982 petitioner wrote to several Army officials to complain about his orders to report as a Captain. Petitioner had, at no time prior to this, complained about his treatment in the Program.
12. In June, 1982 petitioner attempted to resign his commission and rescind his agreement with the Army. Petitioner stated he would be willing to repay the Army for all expenses it had incurred with respect to his participation in the Program. The Army refused to accept petitioner's resignation and reiterated that he was to report to active duty. Petitioner filed this action on June 30, 1982.

CONCLUSIONS OF LAW
1. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 2241, 28 U.S.C. § 1361, and 28 U.S.C. § 1331. Venue is proper in this district under 28 U.S.C. § 1391(e). The habeas corpus portion of this action is properly before this Court under the principle stated in Schlanger v. Seamans, 401 U.S. 487, 91 S.Ct. 995, 28 L.Ed.2d 251 (1971).
2. Traditional principles of contract law govern in this matter. Peavy v. Warner, 493 F.2d 748 (5th Cir. 1974).
*458 3. When a contract has been procured by misrepresentation even if innocently and non-negligently made, the injured party may rescind the agreement. United Forest Products Co. v. Baxter, 452 F.2d 11, 16 (8th Cir. 1971).
4. The Court concludes that no misrepresentations were made to petitioner regarding the benefits he would receive in the Army Health Professions Scholarship Program. Specifically, no guarantees were made regarding the tax status of his stipend, his entry rank, or the availability of Army post-graduate training.
5. Even had petitioner been guaranteed certain benefits, he received exactly what he had bargained for. First, petitioner received his stipend tax-free and was refunded money erroneously withheld from his stipend. The stipend paid under the Program remains tax free today. 26 U.S.C. § 117, as amended by Pub.L.No.93-483 (October 26, 1974). Second, the clear and unambiguous terms of the agreement state that admission to Army post-graduate training programs is on an "if selected" basis. Petitioner testified that he read and understood this prior to signing the agreement. Last, petitioner's original orders erroneously requiring him to report to active duty as a Captain have been corrected, and petitioner's rank has been elevated to Major, effective July 14, 1982. This is exactly the kind of step the law allows the Army to take to remedy its original mistake as to petitioner's rank. Pence v. Brown, 627 F.2d 872, 875 (1980). Nothing indicates to the Court that the Army acted in bad faith with respect to assigning petitioner his entry-level rank.
6. Petitioner is not therefore, for the foregoing reasons, entitled to rescind his agreement with the Army, and is legally obligated to perform his active duty term with the Army.