# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued February 24, 2005          Decided May 3, 2005

No. 04-5004

RICHARD C. ROONEY,
APPELLANT

v.

SECRETARY OF THE ARMY,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 02cv00450)

———

*Christopher D. Wiest* argued the cause and filed the brief for appellant.

*R. Craig Lawrence*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *Kenneth L. Wainstein*, U.S. Attorney, and *Michael J. Ryan* and *Gary Corn*, Assistant U.S. Attorneys.

Before: EDWARDS, ROGERS, and GARLAND, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* GARLAND.

GARLAND, *Circuit Judge*:  Major Richard Rooney seeks a declaratory judgment that his obligation to the Army terminated when the Army discharged him in February 2002, and that the Army's subsequent revocation of his discharge on the ground that it was procured by fraud was unlawful.  The district court granted the Army's motion for summary judgment, and Rooney appealed.  We conclude that a petition for a writ of habeas corpus is the exclusive avenue of relief for Rooney, and that the Western District of Texas rather than the District of Columbia is the appropriate forum.  We therefore vacate the district court's decision and judgment for lack of jurisdiction.

I

The facts of this case are fully set forth in the district court's opinion, 293 F. Supp. 2d 111 (D.D.C. 2003), and we recount them only briefly here.  When Rooney graduated from the United States Military Academy in 1991, he had a five-year active duty service obligation to the Army.  He elected to postpone his service and pursue a medical education under the Armed Forces Health Professional Scholarship Program.  In exchange for the Army's payment of his tuition and expenses, Rooney agreed to an additional eight-year service obligation.  He further agreed that his time in medical school would not count toward fulfilling his active duty requirement.

Rooney began his active duty service when he entered the Army Medical Corps upon his graduation from medical school in 1995.  He spent the next several years as a resident in orthopedic surgery at various military hospitals.  In September 2000, Rooney applied to participate in the Army's Nonfunded Graduate Medical Education Program (NGMEP), which temporarily releases Army doctors from active duty into the reserves to allow them to train at civilian institutions.  NGMEP fellows must, however, return to active duty upon completion of their training to serve for the length of their remaining service

obligation. Rooney was selected to participate in the program, and the Army released him from active duty to begin his NGMEP fellowship on August 31, 2001.

What happened next is hotly disputed by the parties, but both sides agree on the following. Before relocating to San Diego for his fellowship, Rooney filed an application for disability compensation with the Department of Veterans Affairs. He also initiated the formal process for obtaining a discharge from the Army. On January 7, 2002, after a series of communications, Rooney sent the Army a letter of resignation. On February 5, the Army issued an order honorably discharging him. On February 15, however, when it realized that Rooney still had an outstanding active duty service obligation, the Army issued an order revoking the February 5 discharge. A cover letter accompanying the order stated: "Due to an administrative error a discharge order was published on you however, it has been revoked." Letter from Lydia Wesley to Maj. Richard Rooney, Feb. 15, 2002.

On March 11, 2002, Rooney filed suit in the United States District Court for the District of Columbia, seeking a declaratory judgment pronouncing the February 5 discharge effective and voiding the Army's subsequent effort to revoke it. On September 12, 2002, the district court vacated the February 15 order revoking Rooney's discharge, on the ground that Army regulations do not permit revocation solely for administrative error. Mem. Op., No. 02-450, at 1 (D.D.C. Sept. 12, 2002). At the same time, the court noted that the Army "may well have had on February 15, or may now have, a basis for revoking [Rooney's] discharge" on the ground that it was obtained under fraudulent circumstances. *Id.* at 12. The court gave the Army eleven days either to submit a record of the evidence of fraud known to it as of February 15, 2002, or to issue a new revocation order based on the current record. *Id.*

The Army opted to issue a new order, and on September 20, 2002, it again revoked Rooney's discharge and ordered him to report for active duty at Fort Hood, Texas by September 25, 2002. The memorandum prepared by the commanding officer who ordered the revocation stated: "Rooney engaged in an intentional and protracted pattern of fraudulent misrepresentations and omissions to the Army in an intentional effort to obtain a discharge and thereby avoid his nearly eight year contractual service obligation." Mem. from Col. Elton Bruce, U.S. Army Reserve Personnel Command, for the Record (Sept. 19, 2002). On September 23, Rooney sought a temporary restraining order, which the district court denied. Thereafter, Rooney reported for duty at Fort Hood.

On October 15, 2002, Rooney filed an amended complaint seeking a declaratory judgment that "his February 5, 2002 discharge is valid, effective, and irrevocable" and that the revocation order was unlawful. Am. Compl. at 6. The district court granted the Army's motion for summary judgment, finding it "overwhelmingly clear that the Army relied upon substantial evidence of fraud in revoking Rooney's discharge," and holding that the revocation was consistent with the relevant statutes, regulations, and constitutional provisions. 293 F. Supp. 2d at 130. Rooney now appeals.

II

Rooney contends that the Army's revocation of his discharge without a hearing violated Army regulations, the Uniform Code of Military Justice, and the Due Process Clause of the Fifth Amendment to the Constitution. The relief he seeks is a declaration that "his February 5, 2002 discharge is valid," and that the Army's "attempted revocation thereof and orders calling him to active duty are invalid and of no force or effect." Am. Compl. at 6. In other words, Rooney claims that he is "in custody in violation of the Constitution or laws . . . of the United

States," 28 U.S.C. § 2241(c)(3). Although he does not use the term in his complaint, what he seeks from the federal courts is a writ of habeas corpus. *See Parisi v. Davidson*, 405 U.S. 34, 39 (1972) ("[T]he writ of habeas corpus has long been recognized as the appropriate remedy for servicemen who claim to be unlawfully retained in the armed forces."); *Schlanger v. Seamans*, 401 U.S. 487, 489 (1971) (same). And as we have previously held, a party who can petition for a writ of habeas corpus may not instead seek a declaratory judgment. *LoBue v. Christopher*, 82 F.3d 1081, 1082 (D.C. Cir. 1996); *Monk v. Secretary of the Navy*, 793 F.2d 364 (D.C. Cir. 1986). Rooney's declaratory judgment action must therefore be treated as a habeas petition.

In a Notice of Supplemental Authority filed after oral argument, Rooney concedes that "as respects claims that simply challenge the fact of confinement, habeas is the remedy." Second Notice, No. 04-5004, at 1 (Mar. 2, 2005). He contends that declaratory relief is nonetheless appropriate because his claims involve "significant property concerns" (in an honorable discharge and benefits that might stem therefrom) and "do not touch on the fact of confinement." *Id.* That assertion is contrary to the position taken in Rooney's briefs. *See, e.g.,* Appellant's Br. at 11 ("Major Rooney's interest implicates core liberty interests that go beyond . . . a paycheck in his pocket."). It is, in any event, incorrect. If Rooney receives a declaratory judgment that the discharge was valid and the revocation invalid, "release . . . would follow automatically since, in a second action for a writ of habeas corpus, the prior judgment would have res judicata effect." *Monk*, 793 F.2d at 366. It thus does "not matter that he ha[s] not asked for release." *LoBue*, 82 F.3d at 1083. Nor may Rooney "avoid the requirement that he proceed by habeas corpus by adding a request for relief that may not be made in a petition for habeas corpus." *Monk*, 793 F.2d at 366. Accordingly, habeas corpus is Rooney's exclusive remedy. *See id.* (citing *Preiser v. Rodriguez*, 411 U.S. 475, 490 (1973)); *cf.*

*Heck v. Humphrey*, 512 U.S. 477 (1994) (holding that a state prisoner may not challenge the constitutionality of his conviction in a suit for damages under 42 U.S.C. § 1983).

The problem for Rooney is that, because his declaratory judgment action must be treated as a habeas petition, it must also be dismissed for lack of jurisdiction. As the Supreme Court reminded us just last Term, a district court has jurisdiction over a habeas petition "only if it has jurisdiction over" the petitioner's custodian. *Rumsfeld v. Padilla*, 124 S. Ct. 2711, 2722 (2004) (citing 28 U.S.C. § 2241(a) (providing that federal district courts are limited to granting habeas relief "within their respective jurisdictions")). And while the United States District Court for the District of Columbia may have jurisdiction over the Secretary of the Army, that fact does not help Rooney because the petitioner's "immediate custodian, not a supervisory official who exercises legal control, is the proper respondent." *Padilla*, 124 S. Ct. at 2720; *see Monk*, 793 F.2d at 369 ("[F]or purposes of the federal habeas corpus statute, jurisdiction is proper only in the district in which the immediate, not the ultimate, custodian is located.").

Since September 30, 2002, nearly a month before he filed his challenge to the second revocation of his discharge, Rooney has been an active duty officer, physically located at Fort Hood, Texas. During this time, he undoubtedly has been in the custody of the Army for habeas purposes, *see Parisi*, 405 U.S. at 39; *Oestereich v. Selective Serv. Sys. Local Bd.*, 393 U.S. 233, 235 & n.5 (1968), and his "immediate custodian" has been the commanding officer at Fort Hood, *see Schlanger*, 401 U.S. at 490-91 (1971); *Monk*, 793 F.2d at 369.[1] The District Court for

---

[1]Indeed, we think it likely that Rooney was "in custody" for purposes of the habeas statute when he filed his initial complaint in March 2002, since at that point the Army considered him a reservist

the District of Columbia does not have jurisdiction over that officer. *See Schlanger*, 401 U.S. at 490-91 (1971); *Monk*, 793 F.2d at 371. Rather, as the government indicated in its brief and agreed at oral argument, the federal district court with jurisdiction over Fort Hood is the United States District Court for the Western District of Texas, and that is where Rooney must file his petition for a writ of habeas corpus.

## III

For the foregoing reasons, the decision and judgment of the district court are vacated for lack of jurisdiction.

*So ordered.*

---

in the NGMEP subject to military orders and obligated to return to active duty when his fellowship ended. *Cf. Strait v. Laird*, 406 U.S. 341 (1972) (concluding that a reservist called to active duty is "in custody" for habeas purposes); *Eisel v. Secretary of the Army*, 477 F.2d 1251 (D.C. Cir. 1973) (same); *Bohnert v. Faulkner*, 438 F.2d 747 (6th Cir. 1971) (granting reservist's habeas petition). But we need not resolve that question because this appeal only concerns Rooney's challenge to the Army's second revocation of his discharge, which he presented for the first time in the amended complaint that he filed after reporting to Fort Hood. Nor do we think it dispositive that the district court's September 2002 order purported to "retain jurisdiction of this case," Order, No. 02-450, at 2 (D.D.C. Sept. 12, 2002), since the district court cannot by decree grant itself jurisdiction. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) ("Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree.") (citations omitted).