459 F.2d 255
 3 ERC 1976, 2 Envtl. L. Rep. 20,152
 NATURAL RESOURCES DEFENSE COUNCIL, INC., et al., Plaintiffs-Appellees,
National Audubon Society, Inc., Intervenor-Appellee,
v.
TENNESSEE VALLEY AUTHORITY and Aubrey J. Wagner, Chairman,
Tennessee Valley Authority, Defendants-Appellants.
 No. 614, Docket 72-1119.
 United States Court of Appeals,
Second Circuit.
 Argued March 10, 1971.
Decided March 27, 1972.
 
 Richard M. Hall, New York City (John H. Adams, New York City, of counsel), for appellees National Resources Defense Council, Inc., and Sierra Club.
 William A. Butler, Washington, D.C., for appellee Environmental Defense Fund, Inc.
 Gifford, Woody, Carter & Hays, New York City, for appellee National Audubon Society, Inc.
 Thomas A. Pedersen, Knoxville, Tenn. (Robert H. Marquis, Gen. Counsel, Tennessee Valley Authority, Justin M. Schwamm, Knoxville, Tenn., Harry C. Batchelder, Jr., and Mudge Rose Guthrie & Alexander, New York City, of counsel), for appellants.
 Before FRIENDLY, Chief Judge, TIMBERS, Circuit Judge, and JAMESON, District Judge.*
 FRIENDLY, Chief Judge:
 
 
 1
 Plaintiffs in this action in the District Court for the Southern District of New York are three non-profit organizations concerned with the environment. Plaintiffs Natural Resources Defense Council, Inc. and Environmental Defense Fund, Inc. are New York membership corporations, the former having its principal place of business in the Southern and the latter in the Eastern District of New York. Plaintiff Sierra Club is a California membership corporation having its principal place of business in that state. The defendants are Tennessee Valley Authority (TVA), a federal corporation, and Mr. Wagner, its chairman.[1]
 
 
 2
 Section 8(a) of the Act creating the TVA provided that it "shall be held to be an inhabitant and resident of the northern judicial district of Alabama within the meaning of the laws of the United States relating to the venue of civil suits." 16 U.S.C. Sec. 831g(a). Mr. Wagner's residence is in the Eastern District of Tennessee where TVA has its administrative headquarters. Service of process was made as provided in 28 U.S.C. Sec. 1391(e), see fn. 2. Plaintiffs seek declaratory and injunctive relief under various federal statutes and regulations against TVA's purchasing strip-mined coal under contract from Kentucky Oak Mining Company, a Kentucky corporation, and from two lessees of TVA owned property, W. B. Spradlin Coal Company, a sole proprietorship owned by a resident of Tennessee, and West Coal Corporation, a Tennessee corporation, none of which do business in the Southern District of New York. TVA likewise does not do so. The complaint also contained a claim attacking generally TVA's "practice and policy of purchasing and burning huge quantities of strip-mined coal." The merits of the complaint are not before us; our concern is limited to the question of venue.
 
 
 3
 It is common ground that venue could not have been laid in the Southern District of New York under the general federal question venue statute, 28 U.S.C. Sec. 1391(b), since this permits an action to be brought "only in the judicial district where all defendants reside, or in which the claim arose, except as otherwise provided by law." Plaintiffs' case for the propriety of venue rests on 28 U.S.C. Sec. 1391(e), added to the Judicial Code by Sec. 2 of Pub.L.No. 87-748, 76 Stat. 744, which we quote in the margin,[2] and, more particularly, on clause (4) thereof.
 
 
 4
 Defendants moved to dismiss for lack of proper venue on numerous, perhaps too numerous, grounds. They contended (1) that Sec. 1391(e) was not intended to apply to an action against a locally based federal business corporation such as TVA but only to actions against federal officers or agencies which previously could have been brought only at the seat of the Federal Government, in the District Court for the District of Columbia; (2) that Sec. 8(a) of the TVA Act fixing the Authority's residence in the Northern District of Alabama caused the action to fall within the clause in Sec. 1391(e), "except as otherwise provided by law;" (3) that clause (4) of Sec. 1391(e) required all plaintiffs to reside in the judicial district where suit was brought; (4) that "real property is involved in the action" and clause (4) of Sec. 1391(e) was consequently inapplicable; and (5) that the three coal companies were indispensable parties and hence the action was not one "in which each defendant is an officer or an employee of the United States or any agency thereof . . . or an agency of the United States."[3] The district court denied the motion but made the certificate required for an interlocutory appeal by 28 U.S.C. Sec. 1292(b), 340 F.Supp. 400. We granted leave and expedited the hearing of the appeal. Since we sustain the first ground of defendants' motion, we have no occasion to consider the others.
 
 
 5
 On the district court's reading of Sec. 1391(e), the suit could as well have been maintained in the Northern District of California if plaintiffs had chosen to bring it there. Also a suit for similar relief by an environmental organization incorporated in Hawaii or Alaska could be brought in those judicial districts. This is surely a strange consequence when the TVA operates in much the same way as an ordinary business corporation, under the control of its directors in Tennessee, and not under that of a cabinet officer or independent agency headquartered in Washington, and the conduct at issue affects only Kentucky and Tennessee. In holding that Sec. 1391(e) permits a result apparently so eccentric, the court fell into error by treating that section simply as a text to be parsed with such aid as the dictionary and grammar afford and without adequately considering the history of the statute and the evil it was designed to cure. As Mr. Justice Frankfurter pertinently said, "Once the tyranny of literalness is rejected, all relevant consideration for giving a rational content to the words become operative" and "[a] restrictive meaning for what appear to be plain words may be indicated by the Act as a whole, [or] by the persuasive gloss of legislative history. . . ." United States v. Witkovich, 353 U.S. 194, 199, 77 S.Ct. 779, 782, 1 L.Ed.2d 765 (1957).
 
 
 6
 As already indicated, Sec. 1391(e) was not the whole statute which Congress enacted in 1962. It was the second section, the first being what has been codified as 28 U.S.C. Sec. 1361,[4] and the two must be read together. The statute had a long labor period, its conception going back to a bill introduced by Representative Budge of Idaho in 1958.[5] The need for the legislation arose from the venerable decision in McIntire v. Wood, 11 U.S. (7 Cranch) 504, 3 L.Ed. 420 (1813), denying to the lower federal courts mandamus jurisdiction over federal officers, a ruling only partially alleviated by Kendall v. United States ex rel. Stokes, 37 U.S. (12 Pet.) 524, 9 L.Ed. 1181 (1838), holding that mandamus could be maintained in the then circuit court for the District of Columbia. Some relief from this harsh doctrine was obtained by proceeding against a local official through injunction rather than mandamus. But this was permissible only when the superior officer in Washington was not an indispensable party, as he was "if the decree granting the relief sought will require him to take action, either by exercising directly a power lodged in him or by having a subordinate exercise it for him," Williams v. Fanning, 332 U.S. 490, 493, 68 S.Ct. 188, 189, 92 L.Ed. 95 (1947), and application of this principle did not prove easy. As noted in Liberation News Service, supra, 426 F.2d at 1383, "The problem was particularly acute with respect to land disputes in Western states where the Government is a large landowner."
 
 
 7
 After the many vicissitudes summarized in the opinion just cited, the bill that was to become Pub.L.No. 87-748 was introduced by Representative Poff in 1961, and was referred to the Committee on the Judiciary. On behalf of the subcommittee that had considered the bill, Representative Forrester submitted a favorable report, H.R.Rep.No. 536, 87th Cong., 1st Sess. Consistently with the purpose which had animated the legislation from the outset, the report stated its objective as follows:
 
 
 8
 The purpose of this bill is to make it possible to bring actions against Government officials and agencies in U.S. district courts outside the District of Columbia, which, because of certain existing limitations on jurisdiction and venue, may now be brought only in the U.S. District Court for the District of Columbia.
 
 
 9
 Id. at 1. It added in language highly relevant here:
 
 
 10
 This bill is not intended to give access to the Federal courts to an action which cannot now be brought against a Federal official in the U.S. District Court for the District of Columbia.[6]
 
 
 11
 Id. at 2. The Report of the Senate Committee on the Judiciary contained essentially identical statements. S.Rep.No. 1992, 87th Cong., 2d Sess. 2 (1962), reprinted in U.S.Code Cong. & Adm.News, pp. 2784, 2785. The Senate Committee had amended the House bill in various ways including the insertion of the phrase "except as otherwise provided by law," and the report explained this by giving as examples "proceedings brought with respect to Federal taxes and under section 5 of the act of September 26, 1961, relating to immigration." Id. at 4. When the bill passed by the Senate was returned to the House, Representative Poff inquired concerning the effect of the Senate amendments. In explaining the inserted exception, Representative Forrester, who was in charge of the bill, added:
 
 
 12
 It is my understanding that as a result of section 8(a) of the Tennessee Valley Authority Act, actions against the TVA would be another example.
 
 
 13
 108 Cong.Rec. 20094 (Sept. 20, 1962). The Supreme Court has characterized the purpose of Sec. 1391(e) as being "to broaden the venue of civil actions which could previously have been brought only in the District of Columbia." Schlanger v. Seamans, 401 U.S. 487, 490 n. 4, 91 S.Ct. 995, 997, 28 L.Ed.2d 251 (1971).
 
 
 14
 Plaintiffs urged, and the District Court held, that Representative Forrester was mistaken in thinking that Sec. 8(a) of the TVA Act came within the exception added by the Senate, since Sec. 8(a) is not a special venue statute, like those cited in the Senate Report, but simply fixes the residence of the TVA for the application of general statutes wherein venue turns on residence. That may very well be so, but two other considerations remain: One, perhaps the less important, is that the concerned members of the House of Representatives acted on the assurance of the bill's manager that the TVA would not be subject to the new legislation. The other is that the Congressman was right in his conclusion, even if not in his reason. The TVA was not within the bill as it had first passed the House, since it was not the sort of federal agency that could have been sued with assurance only in the District of Columbia. It did not come within the "mischief" at which the new statute was directed,[7] and to which the Committee said it was limited. TVA had always been suable, subject to the same venue limitations as any other corporation, not only in its congressionally fixed residence, the Northern District of Alabama, but in any district where it did business. Unlike the local postmaster or federal land agent, it could never have defeated venue in a suit for damages or declaratory or injunctive relief, which was otherwise proper, on a plea that the suit would lie only in the District of Columbia, since it had no superior in the capital. No one has suggested any tenable reason why Congress would have wished to subject this essentially local federal agency to a suit like this, relating to the compliance of its operations in the Tennessee Valley with federal law, in any federal district, from Maine to Hawaii or from Alaska to Florida, which is the residence of an organization claiming the right to sue under today's liberalized notions of standing. When the statute is read in its full context, with realization of its purpose, and in light of its legislative history, it is plain that Congress did not so direct.
 
 
 15
 The order denying defendants' motion is reversed and the district court is directed to dismiss the complaint for lack of proper venue.
 
 
 
 *
 Of the United States District Court for the District of Montana, sitting by designation
 
 
 [1]
 Appellee National Audubon Society, Inc., which was allowed to intervene by the court below, is a non-profit membership corporation organized under the laws of New York with its principal place of business in the Southern District of New York
 
 
 [2]
 A civil action in which each defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority, or an agency of the United States, may, except as otherwise provided by law, be brought in any judicial district in which: (1) a defendant in the action resides, or (2) the cause of action arose, or (3) any real property involved in the action is situated, or (4) the plaintiff resides if no real property is involved in the action
 The summons and complaint in such an action shall be served as provided by the Federal Rules of Civil Procedure except that the delivery of the summons and complaint to the officer or agency as required by the rules may be made by certified mail beyond the territorial limits of the district in which the action is brought.
 
 
 [3]
 If the coal companies were in fact necessary parties, decisions such as Powelton Civic Home Owners Ass'n v. Department of Housing and Urban Development, 284 F.Supp. 809, 832-834 (E.D.Pa.1968), and Brotherhood of Locomotive Engineers v. Denver & R. G. W. R. R., 290 F. Supp. 612, 615-616 (D.Colo.1968), aff'd on other grounds, 411 F.2d 1115 (10 Cir. 1969), which have sensibly held that the "each defendant" requirement applies only to those defendants as to whom plaintiffs seek to justify venue and personal jurisdiction under Sec. 1391(e) would not assist the plaintiffs here
 
 
 [4]
 The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff
 
 
 [5]
 The history is recounted in Byse & Fiocca, Section 1361 of the Mandamus and Venue Act of 1962 and "Nonstatutory" Judicial Review of Federal Administrative Action, 81 Harv.L.Rev. 308, 313-18 (1967). We have summarized this in Liberation News Service v. Eastland, 426 F.2d 1379, 1383-1384 (2 Cir. 1970)
 
 
 [6]
 Undoubtedly these references were to federal officials or agencies suable in the District of Columbia because of their station there, as TVA's is not. However, TVA likewise is not suable in the District on the basis of doing business since it does not do business there. Fehlhaber Pile Co. v. TVA, 81 U.S.App.D.C. 124, 155 F.2d 864 (1946)
 
 
 [7]
 Heydon's Case, 3 Co.Rep. 7a, 76 Eng.Rep. 637 (1584)