**SANTA FE INTERNATIONAL CORPO-RATION, et al., Plaintiffs,**

v.

**James G. WATT, Secretary of the Interior, et al., Defendants.**

**Civ. A. No. 83–347 MMS.**

United States District Court, D. Delaware.

Feb. 1, 1984.

Andrew B. Kirkpatrick, Jr., and Martin P. Tully, Morris, Nichols, Arsht & Tunnell, Wilmington, Del., for plaintiffs; William T. Coleman, Jr., Washington, D.C., Richard C. Warmer, Carl R. Schenker, Jr., Christopher W. Savage and Susan S. Richardson, Los Angeles, Cal., Donald L. Morgan, J. Eugene Marans, and Jonathan J. Rusch, Cleary, Gottlieb, Steen & Hamilton, Washington, D.C., of counsel.

Joseph J. Farnan, Jr., U.S. Atty., and Richard J. McMahon, Asst. U.S. Atty., Dept. of Justice, Wilmington, Del., F. Henry Habicht, II, Roger J. Marzulla, Special Litigation Counsel, and Lawrence W. Puckett, Dept. of Justice, Washington, D.C., for defendants.

OPINION

MURRAY M. SCHWARTZ, District Judge.

The opening round of this case continues the developing saga of the lower federal

courts' efforts to delineate appropriate venue under 28 U.S.C. § 1391(e) in cases relating to continental oil and gas leases and lease applications. *See Mountain States Legal Foundation v. Watt*, No. 81–C–899 (D.Colo. July 14, 1983); *Ferguson v. Lieurance*, 565 F.Supp. 1013 (D.Nev.1983); *Landis v. Watt*, 510 F.Supp. 178 (D.Idaho 1981); *Ashley v. Andrus*, 474 F.Supp. 495 (E.D.Wis.1979). Proper venue in this case hinges on the narrow question of whether "real property is involved in the action." 28 U.S.C. § 1391(e)(4). For the reasons set forth below the Court concludes that venue is appropriate in the District of Delaware.

The plaintiff corporations (referred to jointly hereinafter as "Santa Fe") are ultimately owned [1] by Kuwait Petroleum Corporation which in turn is owned by the sovereign nation of Kuwait. On March 10, 1983, then Secretary of Interior, James G. Watt, in a "Decision on the Status of Kuwait under the Mineral Lands Leasing Act of 1920 (30 U.S.C. § 181 *et seq.*)," [2] found "that the laws, customs or regulations of Kuwait deny similar or like privileges to citizens and corporations of the United States," and, as a consequence, that "citizens of Kuwait generally may not, through stock ownership, stock holding or stock control, own interests in petroleum leases or permits issued under the provisions of the Act." (Complaint, Doc. 1, Exh. 3 at 9). Secretary Watt's decision seriously injures Santa Fe which, according to the complaint, has 275 oil and gas leases on 252,950 net acres of government land valued at approximately 14 million dollars and has pending 95 applications for MLLA oil and gas leases covering 219,500 net acres. (Complaint, Doc. 1, ¶ 22). The leases and lease applications cover deposits in a minimum of 14 states.

Plaintiffs initiated this lawsuit on June 6, 1983. Their complaint seeks:

(1) to obtain a declaration that Kuwait is a qualified country and the Santa Fe companies are eligible to acquire MLLA leases while under the ownership of KPC and that Secretary Watt's March 10, 1983 allegation to the contrary is incorrect, invalid and improperly arrived at; (2) to obtain injunctive relief during the pendency of this litigation (i) preventing Secretary Watt from denying Santa Fe's pending lease applications and (ii) permitting Santa Fe to acquire, under certain conditions, companies that hold MLLA leases; and (3) to obtain such permanent injunctive relief as appears necessary and appropriate.

(Complaint, Doc. 1, ¶ 18).[3]

The government moved to dismiss for improper venue under Rule 12(b)(3) of the Federal Rules of Civil Procedure, asserting that plaintiffs have not met the requirements of 28 U.S.C. § 1391(e). Section 1391(e) provides in part:

(e) A civil action in which a defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority, or an agency of the United States, or the United States, may, except as otherwise provided by law, be

---

1. Plaintiffs, C.F. Braun & Co. (a Delaware corporation) and Santa Fe-Andover Company (a Wyoming corporation), are wholly owned subsidiaries of Santa Fe International Corporation (a Delaware corporation) whose voting stock is owned by KPC (U.S.) Holdings, Inc. (a Delaware corporation), whose stock in turn is owned by Kuwait Petroleum Corporation (KPC), a corporation organized and existing under the laws of Kuwait.

2. Section 1 of the Mineral Lands Leasing Act of 1920, 30 U.S.C. § 181 ("MLLA"), provides that MLLA leases may be issued to U.S. corporations. It also includes a proviso regarding the eligibility of corporations owned by aliens to obtain leases:

Citizens of another country, the laws, customs, or regulations of which deny similar or like privileges to citizens or corporations of this country, shall not by stock ownership, stock holding, or stock control, own any interest in any lease acquired under the provisions of this chapter.

30 U.S.C. § 181.

3. A somewhat different summary of plaintiffs' objectives appears at a later portion of their complaint: "The controversy between the parties is over Kuwait's status under the MLLA and Santa Fe's right to acquire MLLA leases while its stock is owned by a Kuwaiti corporation." (Complaint, Doc. 1, ¶ 18).

brought in any judicial district in which (1) a defendant in the action resides, or (2) the cause of action arose, or (3) any real property involved in the action is situated, or (4) the plaintiff resides if no real property is involved in the action. 28 U.S.C. § 1391(e).

Several of the plaintiffs in this action are incorporated in the State of Delaware. *See* note 1 *supra.* Thus, if real property is not "involved" within the meaning of the venue statute, the action may be brought under section 1391(e)(4) in the District of Delaware.[4] If, on the other hand, real property is "involved," the case may not be brought in the District of Delaware but may be brought in any of the 14 districts where plaintiffs have leases or lease applications. Finally, whether or not real property is involved in this action, the case may be brought in the District of Columbia under section 1391(e)(1) and (2).[5]

The government characterizes Santa Fe's complaint as requesting "appropriate declaratory and injunctive relief to preclude impairment of plaintiffs' interests in the 275 leases, 95 lease applications, and future leases or lease applications which they may acquire." (Doc. 8 at 3). Plaintiffs, on the other hand, describe the principal relief sought in their complaint as being "a declaration that the laws, customs, and regulations of Kuwait are such that Kuwaiti citizens are qualified to hold interests in federal oil and gas leases under 30 U.S.C. § 181." (Doc. 9 at 1). The competing characterizations of the complaint do not resolve the issue. Even accepting Santa Fe's version, there is no question that the underlying objective of the declaratory relief is to free plaintiffs from an onerous ruling which threatens existing leases and lease applications on government land and precludes acquisitions of future leases or lease applications. Thus, at least indirect-ly, real property is "involved" in this action.

The issue, however, is whether within the specific meaning intended by Congress under section 1391(e) plaintiffs' lawsuit involves real property for federal venue purposes. In resolving this issue section 1391(e) will not be viewed "simply as a text to be parsed ... without adequately considering the history of the statute and the evil it was designed to cure." *Natural Resource Defense Council, Inc. v. Tennessee Valley Authority,* 459 F.2d 255, 257 (2d Cir.1972). " 'Once the tyranny of literalness is rejected, all relevant consideration for giving a rational content to the words becomes operative' and '[a] restrictive meaning for what appears to be plain words may be indicated by the Act as a whole, [or] by the persuasive gloss of legislative history ....' " *Id., quoting United States v. Witkovich,* 353 U.S. 194, 199, 77 S.Ct. 779, 782, 1 L.Ed.2d 765 (1957).

The general legislative intent behind section 1391(e) is clear. Congress added section 1391(e) to the venue statute in 1962[6] in order "to broaden the venue of civil actions which could previously have been brought only in the District of Columbia." *Schlanger v. Seamans,* 401 U.S. 487, 490 n. 4, 91 S.Ct. 995, 997 n. 4, 28 L.Ed.2d 251 (1971). *Accord Superior Oil Co. v. Andrus,* 656 F.2d 33, 37 n. 7 (3d Cir.1981). ("Congress when it amended § 1391(e) in 1962 ... provide[d] broader venue options for more conventional actions implicating continental oil and gas leases.") As the Second Circuit has further explained, Congress "intended to relieve plaintiffs of the burden of litigating far from their residences, to relieve the courts in the District of Columbia of some of their case load, and to take advantage of the expertise district judges acquire in the problems peculiar to their areas. S.Rep. No. 1992, 87th Cong., 2d Sess. (1962), 2 U.S.Code Cong. & Ad.News, p. 2784

---

**4.** Only one plaintiff need satisfy the residency requirement of 28 U.S.C. § 1391(e)(4). *Exxon Corp. v. FTC,* 588 F.2d 895, 898–99 (3d Cir.1978).

**5.** The parties apparently do not contest that the cause of action arose in the District of Colum-bia, and it is clear that at least some defendants reside there.

**6.** Act of Oct. 5, 1962, Pub.L. No. 87–748, § 2, 76 Stat. 744 (1962).

(1962)." *Pruess v. Udall*, 359 F.2d 615, 618 (D.C.Cir.1965).

Congress did not, however, expand the availability of forums without limitation. A predecessor bill to section 1391(e) would have placed venue in any judicial district "wherein the plaintiff resides." The legislative history demonstrates that the final bill narrowed the original proposal because of congressional concerns over the local nature of some real property actions. The Department of Justice, through then Deputy Attorney General Bryon R. White, recommended that the original proposal be changed:

> to grant venue in any judicial district "in which the cause of action arose, or in which any *property involved in the action* is situated." The principal demand for this proposed legislation comes from those who wish to seek review of decisions relating to public lands, such as the awarding of oil and gas leases .... The applicants may reside in any State, or several States of the Union, and it would be unwise to have the Secretary sued in Maine with respect to an oil and gas lease in Wyoming. On the other hand, there is no objection to permitting one who has done business involving land in Wyoming to bring any suit *concerning that land* in the State where it is located.

Letter from Bryon R. White to Sen. James O. Eastland (February 28, 1962), *reprinted in* 1962 U.S.Code Cong. & Ad.News 2784, 2788, 2789 (emphasis added). The thrust of the Department of Justice recommendation found its way into section 1391(e) as enacted. The Senate Report states:

> The Department of Justice also expressed concern that where the plaintiff resides in a different judicial district than that in which real property involved in the action is situated, it would not be in the interest of an expeditious proceeding to have the action brought in the judicial district where the plaintiff resides. The committee considered this suggestion meritorious and approved the amendment set out to section 2 of the bill.

S.Rep. No. 1992, 87th Cong., 2d Sess., *reprinted in* 1962 U.S.Code Cong. & Ad. News 2784, 2787.

Examination of this legislative history demonstrates a concern with disputes affecting particular property located within a judicial district. The language "real property [is] involved in the action" found in both subsections 3 and 4 had its genesis in the Department of Justice recommendation. In the Department of Justice letter, Deputy Attorney General White apparently equated the language "property involved in the action" with "any suit concerning that land." Congress similarly expressed an interest in having local judges resolve disputes affecting local land:

> [D]isregarding considerations of convenience, broadening of the venue provisions of title 28 to permit these actions to be brought locally is desirable from the standpoint of efficient judicial administration. Frequently, these proceedings involve problems which are recurrent but peculiar to certain areas, such as water rights, grazing land permits, and mineral rights. These are problems with which judges in those areas are familiar and which they can handle expeditiously and intelligently.

Sen.Rep. No. 1992, 87th Cong., 2d Sess., 1962 U.S.Code Cong. & Ad.News at 2786.

When measured against the legislative history of section 1391(e), I conclude that the instant litigation does not involve real property for venue purposes. This case is not a proceeding involving problems "which are recurrent but peculiar to certain areas ... such as mineral rights." Nor is this a case which requires the expertise of a judge familiar with mineral rights. The pivotal issue in this case is the validity of Secretary Watt's March 10, 1983, determination under the alien qualification provision of the Mineral Lands Leasing Act. Resolution of that question will require expertise in administrative law and perhaps will include an application of foreign law. It will not involve questions of a peculiarly local nature nor will it require knowledge of state or federal mineral rights law. In

fact, plaintiffs' brief in support of its pending but unargued summary judgment motion refers to no specific leases and asserts no local or federal mineral rights.

Defendants recognize that there are cases where real property involvement has been so tangential so as to avoid invocation of section 1391(e)(3). *See Delaware v. Bender*, 370 F.Supp. 1193, 1199–1200 (D.Del.1974) (suit to enjoin construction of a bridge); *Natural Resources Defense Council, Inc. v. Tennessee Valley Authority*, 340 F.Supp. 400, 406 (S.D.N.Y.1971) (suit challenging an environmental impact statement relating to a contract to purchase coal); *Environmental Defense Fund v. Corps of Engineers*, 325 F.Supp. 728, 731–32 (E.D.Ark.1970) (suit to enjoin construction of a dam). The government distinguishes these cases by asserting that "the matter is different when federal oil and gas leases are at issue" (Doc. 8 at 4), citing primarily three cases which were held to involve real property. *See Mountain States Legal Foundation v. Watt*, No. 81–C–899 (D.Colo. July 14, 1983) (suit for injunctive and declaratory relief relating to Secretary Watt's withdrawal of certain lands in Montana from lease availability); *Ferguson v. Lieurance*, 565 F.Supp. 1013 (alleged improper rejection of 17 oil and gas applications for government lottery for land in Wyoming); *Landis v. Watt*, 510 F.Supp. 178 (appeal of an administrative decision upholding the rejection of offers and cancellation of 29 oil and gas leases in Colorado, New Mexico and Montana). These cases are distinguishable on their facts. They did not involve an across-the-board, administrative law attack on a government decision that was divorced from any substantial concern relating to the leasing of particular local lands. To the extent their rationale might conflict with the analysis contained in this opinion, I respectfully disagree.

The closest published precedent is *Ashley v. Andrus*, 474 F.Supp. 495 (D.Wis. 1979).[7] In *Ashley* the issue was whether the Department of the Interior properly rejected plaintiff's application for an oil and gas lease in another district under applicable statutes and regulations because the named applicant died prior to the lottery drawing. The Colorado district court held that real property was not involved for federal venue purposes, finding that the central issue involved the statute and regulations, not the underlying land. Similarly, I hold that while this case relates to continental oil and gas leases, its primary focus is the validity of Secretary Watt's March 10, 1983, ruling.

An order will be entered denying the motion to dismiss for improper venue.

---

7. *Ashley* was rejected by *Ferguson*, 565 F.Supp. at 1015, and *Mountain States Legal Foundation*, No. 81–C–899, slip op. at 3, and distinguished by *Landis*, 510 Supp. at 180.